Moussaid v. Kirkpatrick, 23264 Good afternoon. My name is Randa Mayer. I represent the appellant Mohamed Moussaid. It's undisputed that Mr. Moussaid suffers from severe mental illness. He has paranoid schizophrenia and he's had it for years. He also has chronic schizophrenia and this quite often evidences itself by his somatic delusions where he feels he's got pain in different parts of his body as well as paranoia that he's being persecuted. Additionally, he's also just plain old delusional more often than not, although he does have moments of clarity. Mr. Moussaid has filed a 2255 because he was convicted of murder in the second degree as well as criminal possession of a weapon in the second degree and he confessed to this murder. And not only did he confess, but if one does not fully believe that he is guilty of this murder, he will be sentenced to life in prison. And if you don't believe what he's saying, he's delusional in terms of his reasons for killing the victim, who he says was paying off his wife in Yemen so that people would have sex with his three children and refused to stop doing it, leaving him only with the alternative of killing the victim. So we're dealing with a very sick man here. From 2008 to 2014, he was examined by at least nine different doctors, if not more. There were ten reports that found him not fit to proceed to trial. He was in front of Justice Carroll on this case for about eight years. Most of the time, he was having hearings and he was in and out of institutions. When he was in New York State institutions, they were able to get his illness under control to the point where he was found competent and then he was sent back to New York City custody where he wasn't getting the same care or he refused to take the treatments and they were not able to deal with his refusal as they were when he was in a state facility. And so he reverted to being incompetent again to stand trial. And this went on multiple times. And if you look at… Well, because, at least in part, because you think he was not taking his anti-psychotic medication. And in part, some of the medications they were giving him weren't sufficient to control what was happening. So he was not stable and he was not competent most of the time. When he was competent, usually, and if you look at the diagrams in my brief, you'll see that he went from being fit to unfit, usually at most… Longest time, according to what I recall, was nine months and sometimes it was as short as five months or less. And this went on, and at one point he was incompetent for about two and a half years. The last examination he had was the one that the judge based the fitness report on. That was in April 15th of 2015. The trial was not until ten months later on February 1st of 2016. So your argument basically is that enough times he went from being competent to being incompetent so that all the signs of incompetency by trial should have led the judge to at least to do a competency test at the time of trial. Yes, Your Honor. That's one of my arguments. And my question, I find that very forceful. My only question is whether this meets the standard that the state was not only wrong, but so miserably wrong that we can do something in this case. That is, you know, it seems to me quite obvious that they should have done another test. Is that bad enough to meet the standard? I would argue that it is. I mean, we're talking about a trial that occurred ten months after his last examination. And as I just said, usually within five months he went from being competent to incompetent. Nobody examined him before the trial, again. And I would disagree with- With the standard in mind. Okay. So I would say that the fitness decision in order, which the judge issued, and the appellate divisions holding, which upheld the fitness decision in order, were unreasonable applications or unreasonable determinations of the 2254 D1 and 2 clauses. Because if you look at the record with respect to, you know, first looking at whether or not the fitness decision, finding that that was an unreasonable application of the epistandard. You know, he was deprived of his due process right to a fair trial under drop. He was incompetent. Within a six year period there were, as I said, ten different examination reports prepared by nine different doctors that said he was incompetent. Justice Carroll himself had issued a commitment and retention order, actually six of them, all adjudicating Mr. Mossiad an incompetent person. He had also presided over the first and second retention hearings at which Dr. Rivas, who had been Mr. Mossiad's treating physician for two years, had testified twice that he was not fit to proceed. Part of the epistandard requires that when a state court judge makes a factual finding that's entitled to a presumption of correctness, so he makes at least a few findings, one of which is that insofar as your client was exhibiting some symptoms, they reflected a form of lingering. I think it's a factual finding, and what you point out is that Justice Carroll had been on this case since 2008. So he's familiar with the defendant, with the petitioner here, and had been willing to commit him and to find him incompetent. And so, you know, I'm also thinking about this epistandard, which is very- No, I understand, but I would, you know, our position is that Justice Carroll's determination that this was malingering was also unreasonably, was an unreasonable application or unreasonable determination. Is that because the malingering tended to be, with respect to the pain that he had, that's what all the malingering evidence was? Well, this is a question of whether he knew that he was being tried, he kept arguing that he didn't want the insanity defense, all sorts of other things which were not linked to any malingering. Correct, and also there were reports by some of the doctors that, you know, if there was any exaggeration or any fabrication, it didn't negate the fact that he also was still incompetent. This was a man who kept insisting he was innocent when the time came to have an insanity defense, that was his only chance. And meanwhile, as I said initially, he had assigned confession, you know, fully detailed as to why and how he killed the victim. He just didn't get it. Even after he was convicted, he thought he was going to go home. He didn't get it. And he still doesn't get it, okay? He is a very sick man with problems, and it's not being addressed properly when he's in DOC custody. And when you're letting him sit there for 14 months, which is how long he was sitting there before his trial, and the last exam is, you know, 10 months before his trial. My feeling is here, based on the entirety of the record, the judge was sick of this. Judges are human beings. He had had enough of this guy. He had finally gotten somebody to say he was competent to stand trial. A day after that report, he jumped on it. He issued his decision. And now the guy's coming into court, and he's still complaining. He's still having these somatic delusions, which are consistent with his illness. He's still talking about being persecuted by the prison guards. He's quote unquote flopping off his chair in front of people. He's carrying on that he's going to die. I mean, this is not the way somebody who is competent would behave, especially somebody facing a life sentence for murder. Thank you. We'll hear from the government, and then you reserve some time for questions. Thank you. May it please the court, Brent Yarnell from the New York County District Attorney's Office for Respondent. Dr. Rivas' opinion, finding that Petitioner was unfit to stand trial as of December 5th, 2014, does not constitute clear and convincing evidence against the judge's factual determination that Petitioner had regained his competence by April 15, 2015. Because in those four months that Petitioner was at Rikers, he began to voluntarily accept a new medication, Risperidone, which- How about, maybe it'd be constructive. You can do whatever you want, but a little bit more constructive to focus on before the trial, just before the trial. Right, well, just before the trial, at the January 11th hearing, right at the outset of the hearing, defense counsel explicitly tells Justice Carrow that Petitioner is competent to stand trial. It was objectively reasonable for Justice Carrow to accept defense counsel's assurance that defense counsel was competent, that Petitioner, excuse me, was competent to stand trial. Number one, is this court recognizing Vamos? Defense counsel's the person who is in the best position. Soon after he says he's incompetent, counsel says he's incompetent. And how difficult is it, given the essential Supreme Court statement that people who are incompetent cannot be tried for a court, simply to look into it. We're not saying that he had to find him competent. We're just asking whether it was a reasonable decision, even under Vietpa's standard, to say I'm not even going to bother to find out whether somebody who has been competent and incompetent, incompetent, then competent, then incompetent, who is now acting in a way that is totally incompetent. And whose counsel, whom he tries to get rid of, says he's incompetent, to look, just to look. Why isn't that, given how relatively small that is, the most essential thing to find out we're not doing something which the Supreme Court has told us we can't do? Number one, it was reasonable to believe that petitioner's documented compliance with his medication during his latest stay at Rikers was evidence that he was less likely to deteriorate than he had been on previous occasions when he stopped taking his medication. But then he starts to do all sorts of things that are bizarre. He won't have the only defense that might work. He does, I mean, I don't want to go through the record of all the really strange things that he starts to do. The first thing he did at the January 11th hearing was when Justice Caro said, we're here to set your trial date. He said, what is trial? Justice Caro immediately addressed that. He asked the defense attorney, is he fit to stand trial? The defense attorney said, yes, he is. It was objectively reasonable for Justice Caro to accept that. Because in part, I think the obvious reason why defense counsel said that was because there was substantial reason to believe that defendant was malingering when he claimed that he did not know what trial was. And the magistrate judge noted the record showing the defendant had a documented history of feigning ignorance of legal concepts. He had demonstrably mastered at two separate hospitals, Kirby and Bellevue. This is in the Coons report. It's in the Sarai report. At both of those hospitals, he was documenting feigning ignorance of concepts like trial. Moreover, Justice Rivas said that not knowing key procedures had, I mean, I'm sorry, Dr. Rivas had said that ignorance of key courtroom procedures such as trial had never been part of petitioner's mental illness. And you can go back throughout his entire psychiatric history. Every time he was incompetent to stand trial, he showed that he knew what terms like trial in a jury was. So a great example is the Schneider and Sarai reports where they asked him, what's the role of the jury? And what he said is, the role of the jury is to listen to the trial and then decide whether I'm guilty or not guilty. There is no doubt that there are times when this guy was competent. There is also no doubt that there are many times when this guy was not competent. So my only question is, is a failure to look when he starts giving the same signs of incompetence that he'd given before as not wanting certain defenses and so on. Whether it is required for a judge to look. That's my only question. It was not- Even under the Ed book. It was not objectively unreasonable in part because, as this court recognized in Harris, you look not just to evidence of incompetency, but you look to all the evidence of incompetence, of competence, excuse me. And it was certainly, a fair-minded jurist could certainly believe that the running commentary that petitioner provided for the first two witnesses on the first day of trial was evidence that any somatic delusions he might have been experiencing were not preventing him from focusing on the proceedings. And then defense counsel's failure to rebut the prosecutor's assertion, the defense counsel- Let's assume that so. Can a person become so incompetent in the course of a trial that the trial is improper? Of course, of course. Of course. So the fact that he may have been competent at the beginning, or that a court would not be violating something at the beginning, if there was sufficient evidence, considering the whole record, that at some point this guy's gone off the bend, might be enough reason to look. That's certainly possible in theory, but in this case we have evidence, we have episodes from the beginning of trial all the way through the end where he's showing his competence. So I just mentioned the running commentary on the first day of trial. On the second day of trial, he interrupts Detective Killen's testimony to rebut his written confession, correctly pointing out that the written confession had not been caught on videotape. And then at the end of the prosecutor's, after the prosecution's case closed, he told the judge that he was considering taking a stand for the purpose of rebutting the written confession. As Dr. Coons had found, his efforts to rebut his written confession were evidence that he understood the issues in the case and had the capacity to actively pursue a defense strategy. I'd also say that a fair-minded jurist could conclude that the colloquy petitioner had with Justice Carrow about his decision on whether or not to take the stand showed that he had the capacity to weigh costs and benefits of alternative defense strategies. So we have, he initially tells Justice Carrow he's considering taking the stand. What alternative defense strategies was he judging among? Not saying that he wasn't insane? Saying that he didn't do it when 27 witnesses, I'm exaggerating, saw him do it? And he had a confession which he may attack? I mean, what were his alternatives that he was thinking of that made any sense to any person who has a minimal amount of mind? Well, let me just make two comments. First of all, in that colloquy, one alternative is taking to the stand for the purpose of rebutting the written confession. That was what he was thinking about. However, he changed his mind and decided not to take the stand after the judge told him that the prosecutor would have the opportunity to cross-examine him. That clearly shows that he has the ability to take in what the judge is saying and recognize that there are risks and opportunities to different strategies. And he's capable of taking in that information and making a rational decision. Also, on the insanity defense, I would note petitioner's decision not to raise the insanity defense was a rational decision. He had a very low likelihood of prevailing on the insanity defense because in order to prevail on the insanity defense, you have to show that you didn't have the presence of mind to understand what you were doing and why what you were doing is wrong. And as his confession showed, he clearly had that. He showed that he had planned this out along many days in advance. He also showed that he had a recognition that what he was doing was wrong because he told the police he hid. He climbed up to the rooftop and he hid until the police left and then he went into hiding. So that clearly showed that he had the mental capacity such that an insanity defense would not have worked. And- But what other defense did he have? Well, the other defense was actual innocence. And what I would say is that both of these defenses were defenses that had a low likelihood of prevailing. However, if he prevails on the actual innocence claim, he goes free. If he prevails on the NGRI claim, there's a very significant likelihood, given his mental illness, which he certainly has, that he could end up being sent straight back to Kirby or MidHudson. And so you have two defenses that both have a very low likelihood of credibility. The one he picked is the one that would enable him to go free if he won on it. The one that he did not pick is the one that could potentially have resulted in indefinite- On the record, what was the status of his medication? On the record? So Dr. Siric notes this and basically- That's a year before. But during the trial, what was the status of his medication and its compliance with his medication regime? We don't have record evidence of Petitioner's medication status at the time of trial. I mean, the one slimmer of evidence we have is that on the morning of the first day of trial, Petitioner claimed that they hadn't given him his medication that morning. And that certainly could be reasonably interpreted as evidence that he still recognized that he needed to take his medication at that point. However, we would just note that in Dr. Siric's report, he noted that Petitioner demonstrated a fair recognition of the need to continue taking his medication. Is there any evidence that the judge at least asked, is he on medication? That is, even without doing a full test, that he asked something which in the past was essential to the person being capable of defending. He did not ask that specific question, but he did ask defense counsel at the January 11th hearing, is he competent? Yeah, no, we know that. But I asked a question, you gave me an answer. The answer is no, he didn't ask whether he was on medication. That's correct, the answer is no, but I would just note that the record shows that Justice Carrow clearly was attentive to his ongoing obligation here. Of course he was. This trial judges have a hard time, and they sometimes make mistakes. And the question is, are we supposed to say that in a case of somebody with this fellow's history, it is enough not only not to do a test when the last genuine competency thing was a year before, and he has a history of going off, and of going off and he's not on medication. At that time, court didn't even ask if he was on the thing that made him competent. And I agree that it certainly would have been better if Justice Carrow had asked that specific question. I would just say it was not objectively unreasonable for him not to, given the fact that defense counsel really did not dispute at all, that petitioner clearly understood what was going on at the time of trial. Thank you. We'll hear some rebuttal. First, the evidence was not just clear and convincing. It was overwhelming that this guy was incompetent at the trial, for sure. There were ten prior reports that documented the ways his incompetence was demonstrated. Which was somatic delusions, and persecution paranoia, and delusional thinking. And all of those demonstrated themselves at the trial. So it wasn't like, what could this possibly mean? It was clear from the prior reports that this behavior meant that he was incompetent. Because past doctors had found that this behavior was evidence of his incompetence. As far as, let's see, different things open here. As far as his understanding some of the roles in the courtroom, sometimes there were reports by doctors that found him unfit, despite his ability to understand the roles of courtroom personnel. Dr. Rivas had a report, it's in the appendix at A1199, that found him unfit, even though with some prompting he's able to recite the roles of the courtroom personnel. Dr. Soraya found him unfit, even though he was aware of the charges and who the various parties were. That's in the appendix at A period 1188. Dr. Rosener found him unfit, despite his understanding of the charges, the role of the jury, the defense lawyer, district attorney, and judge. That's at A.1136. And Dr.- Is it your position, is it your position, I mean, I take it that it must be, I'm reading, that he could, he was unable to ever be fit to stand trial? That's not necessarily my position, but my position, at this point of time when he was at trial, he was unfit. Whether or not, if they had transferred him to some place and maybe given him some other kind of medication. So if he had taken his medication, and that would have been on the record, would that have been enough? So, I mean, according to even the appellee's brief, even when he was at Rikers and he was getting the Risperdone, he continued to exhibit somatic delusions. He also expressed- But there might be- So that medication wasn't working. But it might be that with appropriate medication, he might at some time be able to stand trial at the time of trial. Anything's possible, yeah, sure, why not? I mean, it's just a matter of finding that medication and giving it to him. Okay, thank you very much. Thank you.